## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Newport News Division

KATHERINE LEE COMBS,

      **Plaintiff,**

    **v.**                                       **4:11CV43**

**MICHAEL J. ASTRUE, COMMISSIONER,**
Social Security Administration,

      **Defendant.**


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Katherine Lee Combs ("Combs" or "Plaintiff") brought this action under 42

U.S.C. §§ 1383(c)(3) and 405(g) seeking judicial review of the decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her claim for disability insurance benefits

("DIB") under Title II and Title XVI of the Social Security Act. By order filed May 17, 2011, this

action was referred to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C.

§§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the

reasons stated below, the Court recommends that the decision of the Commissioner be affirmed.

### I. PROCEDURAL BACKGROUND

On June 2, 2008, Combs filed an application for DIB, alleging disability beginning June

30, 2000, due to diabetes mellitus, hypertension, obesity, carpal tunnel syndrome, history of

tumor removal, vision problems, frozen left shoulder and mini-strokes. (R. 62-63; 91-92). The

Commissioner denied her application initially (R. 46-50), and upon reconsideration, (R. 55-56).

Combs requested a hearing which was conducted by video on February 1, 2010. (R. 19-35). At the hearing, Plaintiff amended her alleged onset date to June 1, 2005. (R. 30).

On February 23, 2010, Administrative Law Judge ("ALJ") Irving Pianin found that plaintiff was not disabled within the meaning of the Social Security Act, and denied her claim for DIB. (R. 10-16). On January 3, 2011, the Appeals Council denied her request for review of the ALJ's decision (R. 1-3), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), on February 24, 2011, Combs filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Combs previously filed applications for a period of disability and disability insurance benefits on July 25, 2000 and August 2004. (R. 10). Both claims were denied initially on September 22, 2000 and January 4, 2005 respectively. Id. Combs did not appeal either decision, thus both denials became administratively final. Id. In this case, the Commissioner adopted the findings of the prior decisions because he found that there was no new and material evidence relating to the findings. (R. 10); See McGowen v. Harris, 666 F.2d 60 (4th Cir. 1981).[1] Thus, the period through January 4, 2005 has already been adjudicated and Combs was found to be not disabled. Id. Additionally, Combs' date last insured is December 31, 2005. Therefore, to be

---

[1] See also Social Security Acquiescence Ruling 00-1(4)("In a subsequent disability claim, SSA considers the issue of disability with respect to a period of time that was not adjudicated in the final determination or decision on the prior claim to be a new issue that requires an independent evaluation from that made in the prior adjudication.").

entitled to DIB, she must have established disability between January 4, 2005 and on or before December 31, 2005. (R. 11).[2]

Combs was born on March 8, 1946, and was fifty-nine years old in 2005 at the time of the alleged onset of disability, and was therefore considered a "person of advanced age" pursuant to 20 C.F.R. §§ 404.1563(c) and 416.963(c) (2009). (R. 87). Combs testified that she is 5'3" and weighs 245 pounds. (R. 21). She has a twelfth grade education, and lives with a friend in Newport News, Virginia. (R. 20).

Combs worked as a teacher's assistant for six years, but stopped in 2000 because of her medical problems. (R. 21-22, 28). She testified that the medication she took for diabetes "caused [her] not to be able to do the job..." (R. 21). Combs also said that she had a frozen shoulder, a mini stroke, and that the medication she took for acid reflux induced drowsiness and dizziness. (R. 22). Combs is still on those medications. (R. 27). She further testified that she has "a little arthritis in her back," and had carpal tunnel surgery in both hands. (R. 23).

Combs indicated that she could lift and carry about five pounds, though she did not have lift or carry much as a teacher's assistant-- she could "sit and do [her] work." (R. 23-24). Combs lived "off and on" with a friend in 2005. (R. 24). She cooked a little, did dishes, drove, did laundry, and some food shopping with help. (R. 25). Since June 2005, her alleged onset date, Combs testified that her medical problems have gotten worse. (R. 26). She used to be able to get on her hands and knees to scrub floors, but no longer can. (R. 27). She can still do dishes in the dishwasher, but needs help with her laundry, and she doesn't drive much anymore. (R.

---

[2] "A person must be fully insured before disability insurance benefits can be paid to the worker or to his family." 1-2 Matthew Bender & Co. Inc., Social Security Practice Guide § 2.03 (2010). A person is considered fully insured when he has the requisite number of quarters credited to his Social Security earnings record. Id; see also 20 CFR §404.101(2010). The date through which the person is insured will generally be furnished on his or her earnings records. Soc. Sec. Program Op. Manual Sys. §RS 00301.148(2).

28).  A medical note from August 2009 states that Combs "…only exercises when she goes to

the grocery store." (R. 322).  Combs testified that she has had three "mini-strokes," and "a little

diabetes in my eyes." (R. 28).  This makes it difficult for her to drive at night, even with her

glasses. (R. 28-29).   She has glaucoma, and had laser surgery for vision on both eyes. (R. 29).

Combs received most of her medical treatment from Riverside Family Medicine, dating

back to 1999. (R. 155-233).  Her primary complaints have been headaches, diabetes,

hypertension, reflux disease, and pain in her right arm.  Id.  Combs did not seek treatment from

June 2003 to March 2004, at which point she visited the clinic for medication refills and denied

any complaints. (R. 178).  Her March 2004 examination revealed normal ENT, abdomen,

lymphatics, and musculoskeletal functions. (R. 179).  Combs' next visit was nine months later

on December 15, 2004. (R. 176).  She reported no complaints, no pain, and records indicate that

her diabetes, blood pressure, and reflux were well controlled, and her hypertension was

improved. (R. 176).

Combs' appointment on January 21, 2005 reflects that she "has been doing fine, no

complaints,… BS and BP [blood Sugar and blood pressure] has also been controlled." (R. 174).

Her diabetes and hypertension were noted as improved.  Id.  Combs described "no pain" during

her visit on April 26, 2005, in which her blood sugar rose after she ran out of one of her

medications, but otherwise she was reported as "doing fine." (R. 171).

Combs' next visit to Riverside Family Medicine was over a year later, on September 18,

2006. (R. 168).  She complained of hip and toe pain on her left side, from a fall outside of her

apartment. (R. 168).  She was directed to obtain an x-ray and was prescribed nonsteroidal anti-

inflammatories.  Id.  She did not have another appointment with Riverside until January 18,

4

2007. (R. 165). In general, her 2007 appointments show that her diabetes was not controlled, she experienced heart palpitations, and has edema in her legs. (R. 161-67).

Combs had several appointments with Dr. Robert J. Pusateri at the Center for Renal Medicine in 2008 and 2009. (R. 237- 42). He diagnosed her with metabolic syndrome and indicated that weight loss and diet should be the main treatment. (R. 242). During an appointment in January 2009, Dr. Pusateri indicated that, though her diabetic nephropathy was minimal, without proteinuria, "she has all the other makings for end-stage renal disease....." (R. 237). He also reported that her blood pressure was uncontrolled, and had experienced a stroke. (R. 238). Combs saw Dr. Pusateri several more times in 2009, and notes indicate similar diagnoses, along with some medication changes. (R. 350-55). Combs also sought treatment at Lackey Free Family Medicine Clinic between 2008 and 2009. (R. 252). Records indicate treatment for chest pain, palpitations, hypertension, obesity, hyperlipidemia, and knee, back, and shoulder pain. (R. 252-65).

Combs' medical records also indicate that she began gastroenterology treatment for abdominal pain, diarrhea, nausea and vomiting with Dr. Jonathan Eisner in December 2000. (R. 152-53). He indicated that a rectal polyp would require local removal, and discussed Combs' blood sugar and the size of each of her meals. Id. Combs also indicated to Dr. Eisner that her medication was causing drowsiness. Id.

Combs was treated for shoulder pain beginning in 2000. (R. 202-07). She was diagnosed as having "biceps tendon injury," and reported no relief despite having a steroid/marcaine injection five days prior. (R. 204). Combs was referred to Dr. Cavazos who treated her with injections that provided some relief. (R. 202). In 2001 her condition was described as "chronic

right shoulder pain secondary to a rotator cuff tear." (R. 196). In 2002, records reflect that

Combs began treatment for left shoulder pain. (R. 191-92). She was treated with injections, and

notes indicate possible degenerative joint disease with a referral to physical therapy. Id. Combs

also underwent several vision-related treatments beginning in 2003. (R. 282-315, 340-348). She

was diagnosed with clinically significant macular edema, and underwent focal laser surgery in

2004, 2006, and 2009. (R. 293, 312, 346).

On January 7, 2009, a non-examining state agency physician, Dr. Leopold Moreno,

reviewed Combs' medical records for the relevant time period and concluded that "there is no

additional evidence and no new impairment worsening of condition or change" since her last

decision adjudicating her eligibility for Social Security Benefits. (R. 251). Dr. Moreno also

stated that "[t]here is no evidence of a disabling condition prior to DLI [date last insured]." Id.

Additionally, at the hearing the ALJ heard testimony from a Vocational Expert ("VE")

who indicated that Combs' past work as a teacher's assistant is considered light, semi-skilled

work. (R. 32). The VE noted that a person of the same age, education, and work background as

Combs, who would be capable of light work provided that it did not involve exposure to heights

or hazards, could perform Combs' past work as a teacher's assistant. (R. 32).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to

determining whether the decision was supported by substantial evidence on the record and

whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g)

(2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan,

907 F.2d 1453, 1456 (4th Cir. 1990).[3] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as the:

---

[3] "The issue . . . therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[4] 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

---

[4] The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2. However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a VE to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. §§ 416.920(f) and 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10, 1983 WL 31251 (S.S.A.).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.   ALJ's Decision

In the present case, the ALJ made the following findings under the five-part analysis: (1) Combs has not engaged in substantial gainful activity from her alleged onset date of disability through her date of last insured; (2) she has severe impairments of diabetes mellitus, hypertension, and obesity; (3) her impairments (or combination of impairments) did not meet or medically equal one of the listed impairments in Appendix 1; (4) Combs is capable of performing her past relevant work as a teacher's assistant, as she has the RFC to perform to perform light work as defined in 20 C.F.R. 404.1567(b). (R. 13-16).

In her motion for summary judgment, Combs alleges that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in finding Combs' carpal tunnel syndrome, vision problems, frozen left shoulder, and mini strokes non-severe. In Combs' Reply

9

brief she also alleges that the ALJ's determination that Combs could perform her past relevant work as a teacher's assistant is not supported by substantial evidence.

**B.**     <u>**Substantial evidence supports the ALJ's determination that during the relevant time period Combs' carpal tunnel syndrome, vision problems, frozen left shoulder, and mini strokes were non-severe.**</u>

The relevant period in this case is June 1, 2005, Combs' amended disability onset date, to December 31, 2005, her date last insured for disability benefits. Moreover, based on her two prior claims for disability, which were both denied, the period through January 4, 2005 has already been adjudicated and Combs found to be not disabled. Combs argues that the medical evidence leading up to her date last insured demonstrates that she suffers from severe impairments that "cause more than a minimal restriction on her ability to engage in basic work activities." (Pl.'s Mot. Sum. J., ECF No. 12 at 8).

At step two of the sequential analysis, the ALJ must determine whether the plaintiff has a severe, medically determinable physical or mental impairment. 20 C.F.R. §§ 1520(a)(4)(ii) and 416.921. The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits [the plaintiff's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c) and 416.920(c). In contrast, an impairment is not severe when it is only a slight abnormality that would have no more than a minimal effect on an individual's ability to work, regardless of the individual's age, education or work experience. <u>Evans v. Heckler</u>, 734 F.2d 1012, 1014 (4th Cir. 1984); <u>see</u> 20 C.F.R. §§ 404.1521(a) and 416.921. "At the second step of sequential evaluation, then, <u>medical evidence alone</u> is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985 WL 56856, at *4 (S.S.A.). (emphasis supplied). Impairments must be established

by "medically acceptable chemical and laboratory diagnostic techniques," and must have lasted or be expected to last twelve months. 20 C.F.R. §§ 404.1508 and 1509.

In this case, the undersigned finds that there is substantial evidence to support the ALJ's determination that Combs' carpal tunnel syndrome, vision problems, frozen left shoulder, and mini strokes had no more than a minimal effect on her ability perform basic work activities. With respect to her carpal tunnel syndrome, the evidence is little more than Combs' own testimony. (R. 23). In fact, during her testimony Combs could not recall when she had surgery, nor does it receive more than a fleeting mention in Plaintiff's brief. (Pl.'s Mot. Sum. J., ECF No. 12 at 4, 9, 10). The notes from Combs' October 2001 appointment, which is well outside the relevant time period for this case, simply state, "[s]he also recently had a right carpal tunnel release." (R. 196). Medical records from 2005 and 2006 do not indicate that Combs had any complaints with regard to her alleged carpal tunnel problems. Therefore, the undersigned finds that substantial evidence supports the ALJ's finding that Combs' carpal tunnel syndrome is non-severe.

Plaintiff's counsel does not even address Combs' vision problems in the argument section of the Motion for Summary Judgment, and there is little, if any, evidence to show that her vision problems would preclude work. Combs' own testimony indicates that her main complaint regarding her vision is when she attempts to drive at night. (R. 28-29). Her medical records indicate that she had focal laser procedures in 2004, 2006 and 2009, but do not reflect any further limitations with regard to her eyesight. (R. 293, 312, 346). In fact, notes from her appointments in January 2005, April 2005, and January 2007 indicate that she denies blurring, diplopia, irritation, vision loss, or vision change. (R. 165, 174). There is no information in the record that

her vision problems would significantly limit her ability to work. Accordingly, the undersigned finds that substantial evidence supports the ALJ's finding that Combs' vision problems were non-severe.

Combs alleges that the ALJ erred in finding that her mini-strokes were non-severe impairments. She asserts that she has difficulty with memory and concentration as a result of these mini-strokes. (R. 28; Pl.'s Mot. Sum. J., ECF No. 12 at 10). The evidence Combs references involve symptoms from 1999—again, well outside the relevant period for this case. The medical records from 2005 and 2006 provide absolutely no indication that Combs suffered concentration or memory loss. (R. 168-174). Therefore, the undersigned finds that substantial evidence supports the ALJ's finding that Combs' mini-strokes were non-severe.

Finally, Combs asserts that the ALJ erred in finding her frozen left shoulder non-severe. In his opinion, the ALJ stated, "[w]hile claimant's problems with her left shoulder are acute, it has been transitory in nature requiring only conservative treatment...." (R. 13). He went on to find that it has no more than a minimal effect on her ability to perform basic work related functions. Id. Medical records reflect that Combs initially complained of pain in her right shoulder and was diagnosed in 2001 as having "chronic right shoulder pain secondary to a rotator cuff tear." (R. 196). In 2002, the notes indicate Combs began treatment for left shoulder pain. (R. 191-92). She was treated with injections, and was referred to physical therapy. Id.

During the relevant period for this case, January 2005 to December 2005, Combs indicated that she "has been doing fine, no complaints." and "[n]o pain described." (R. 174, 171). During an appointment on September 18, 2006, Combs reported "joint pain" in her hip and toe from an accidental fall. (R. 168-69). However, there are no indications in Combs'

medical records that she suffered from shoulder pain in 2005 or 2006. Records from the Lackey Free Family Medicine show that Combs complained of right and left shoulder pain on September 3, 2008, however, follow-up visits show no further reports of shoulder pain. (R. 252-257). In December 2009, Combs reported "[n]o joint abnormalities." (R. 351). Therefore, the undersigned finds that the ALJ's finding that Combs' frozen left shoulder was a non-severe impairment is supported by substantial evidence.

C.   **Substantial evidence supports the ALJ's decision that Combs is able to perform her past relevant work as a teacher's assistant within the limits of her RFC.**

In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 416.929(a). Under both federal regulations and Fourth Circuit precedent, Combs must first satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R. § 416.929(b); Craig, 76 F.3d at 594 and 595.

The ALJ must then evaluate the intensity and persistence of Combs' symptoms and the extent to which they affect her ability to work. 20 C.F.R. § 416.929(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the claimant's history, including the claimant's own statements, Id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," Id. at § 416.929(c)(2); and (3) other evidence submitted by the claimant relevant to the severity of the impairment such as evidence of daily activities,

13

medical treatments and medications, and descriptions of the pain or other symptoms, Id. at §
416.929(c)(3).

Here, the ALJ followed this two-step inquiry. The ALJ found that Combs had severe
impairments of diabetes mellitus, hypertension, and obesity. (R. 13). He further determined that
Combs' impairments could reasonably be expected to cause the alleged symptoms, but that her
statements concerning the intensity, persistence and limiting effects of the symptoms were not
credible to the extent they are inconsistent with the RFC. (R. 15).

In this case, the ALJ found that Combs has the RFC to perform light work as defined in
20 C.F.R. 404.1567(b), and specifically, that she is capable of lifting and carrying 20 pounds
occasionally and 10 pounds frequently, sitting for up to 6 hours, and standing and walking for up
to 6 hours during an 8-hour workday. (R. 14). He also noted that the Combs must avoid work at
heights or around hazards. Id. The ALJ further found that Combs is capable of performing her
past relevant work as a teacher's assistant. (R. 16).

In her Reply brief, Combs asserts that the ALJ determined Combs' RFC without
addressing medical source opinions, and concluded "without rationale" that she could perform
her past work as a teacher's assistant. (Pl.'s Reply, ECF No. 15 at 3, 5). Federal law requires
the ALJ to consider and weigh medical source opinions. 20 C.F.R. § 416.929(c)(1). Combs
asserts that the ALJ did not, but fails to identify any medical source opinions in the record which
she contends the ALJ should have considered. In fact, the Reply brief notes that "[c]uriously, no
physician completed a PCE [physical capacities evaluation] form in this matter." Id. Combs
does not present any information, in the form of a PCE or otherwise, from her medical providers
that suggests she is unable to work, or that even assesses her functional capacity. Instead,

counsel relies on vague assertions such as "[t]his is not consistent with the evidence in the record," and "there is absolutely no evidence of record which supports the ALJ's RFC assessment." Id. at 5. Combs further argues that the ALJ improperly relied on the State Agency expert without examining the medical source opinions. (Pl.'s Reply, ECF No. 15 at 5). Again, the brief fails to provide any indication as to what medical source opinions the ALJ should have considered. Moreover, the undersigned has reviewed the medical record and found no medical source opinion in the relevant time period which would contradict the ALJ's findings. Accordingly, the ALJ reasonably relied on the state agency consultant, as his finding is consistent with the medical evidence in the record.

Combs' essentially argues that the ALJ should have deferred to her own testimony when determining her RFC. Id. at 5. In fact, the ALJ did consider Combs' testimony regarding her ability to perform basic functions. He opined:

> Ms. Combs testified that she can lift and carry 5 pounds due to carpal tunnel suergery in both hands. She reported that she does not know how much she was able to lift in 2005. In addition, the claimant reported that she could stand for 30 minutes; however, she has to sit down to rest for 45 minutes. The claimant stated that she was able to wash dises, do laundry and perform household chores; however, she did not work at a fast pace. She reported that she did some cooking; however she had to sit down occasionally. The claimant also stated that she shopped for food with some help. (R. 14).

The ALJ also considered Combs' objective medical records. He noted that records from Riverside Family Medicine in January 2005 show a follow-up visit for diabetes and hypertension, and that she had multiple medical problems including obesity, hypertension, and insulin-requiring type 2 diabetes. (R. 15). He further observed that these records indicate that no pain was described, and that she was "well developed," "well nourished," and in "no acute distress." The ALJ considered the fact that the records from this visit assessed her diabetes as

uncomplicated and improved. The ALJ also noted a follow-up visit in April 2005 which reported that her blood sugar was high as a result of Combs having run out of medication, but that otherwise she "was doing fine." Id.

The ALJ also detailed Combs' September 2006 medical records in which she complained of left hip pain following an accidental fall. Id. He noted that her gait and station were normal, and that she had full range of motion. Id. The ALJ recounted the medical records from January 2007 which indicated that her blood pressure was well controlled, her cardiovascular system was normal, but that her diabetes was still not controlled. Id. The ALJ noted that Combs reported hear palpitations and shortness of breath during a follow-up visit in September 2007, but that her EKG was within normal limits without arrhythmia. Id. He finally noted that on September 11, 2007, Combs reported that her palpitation had resolved. Id. The ALJ considered the opinion of the non-examining State Agency medical consultant, who determined that there was no evidence of a disabling condition prior to the date last insured. (R. 15, 251) The ALJ stated that "[b]ased on the overall evidence of record, the State Agency findings are accorded significant weight. (R. 15).

There are no indications in Combs' medical records from 2005 and 2006 that she reported concentration or memory problems, or that her medications were inducing drowsiness. She reported cold symptoms in April 2005 that caused fatigue. (R.171). In January 2005, January 2007, March 2007, and October 2009 she denied experiencing fatigue. (R. 163, 165, 174, 328).

Considering the medical records, Combs' testimony, and the findings of the DDS expert, the ALJ found that "...objective medical evidence fails to support limitations that would

preclude the performance of all work activity prior to the date last insured....Statements in the record indicate that the claimant could manage her personal needs, drive and shop without assistance." (R. 15) He went on to write that, "[t]reatment was conservative in nature and treatment notes do not corroborate the degree of impairment alleged. There is no evidence to support worsening of symptoms or adverse medication side effects, which would have impaired her ability to work." (R. 15).

To the extent Combs contends that the ALJ erred in evaluating her credibility, the Court must give great deference to the ALJ's credibility determinations. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). The Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). The undersigned finds no error in the ALJ's findings with respect to Combs' credibility.

The undersigned finds that the ALJ expressly, and with detail, based his RFC determination on each of Combs' medical appointments in 2005 and 2006, her own testimony, and the findings of the DDS expert. The ALJ properly evaluated Combs' testimony and found her only partially credible. Moreover, Combs has identified no medical sources who contradict the ALJ's findings. Accordingly, the undersigned finds that the ALJ's RFC determination is supported by substantial evidence.

Finally, Combs argues she cannot perform her past work as a teacher's assistant, and that the ALJ's contrary opinion is not supported by substantial evidence. (Pl.'s Reply, ECF No. 15 at 2). Combs argues that her duties involved more than "…just sit[ting] at a desk, " and that "…the evidence does not support a finding that she can perform the physical and mental demands of her past relevant work." Id. at 2-3. In her Reply brief Combs refers to her application for disability which indicates that she walks and stands more than she sits, carries twenty pounds, and stoops and kneels while working. (R. 93). She also points to her Work History Report completed in 2008 that indicates she spends most of the day walking, kneels often, and sits only at lunch. (R. 101).

Combs' hearing, however, included testimony from a vocational expert. When asked by the VE if she could provide a more detailed description of her duties, Combs described her previous job:

> In the morning when the kids got in I would get them, and let them, you know, and they would hang their coats and things, and put their lunches and stuff away. Then after they got in there, and got in the room and did that, and what I had to do, and I could sit at my desk and do this. I would have to, you know, take the roll, and get—they had name tags on, and I would have to empty all their name tags, and get the money out of there. If the parents had sent notes I would have to, you know, read the notes, and I had the notes to send home. I would send notes home to them, and put them in their name tag. After I did all that I would go take that to the office, and go get their milk and bring it back to the classroom, and then I would—the teacher would be doing her lesson, and what I would have to do is sit in. I would just sit there and watch her as she do the teaching and stuff, and if the kids were disruptive or something and talking, I would just tap them and make them pay attention… All I had to do was just monitor the kids, and take them outside when they went outside, and monitor them outside, and when they were out there out there playing and things like that. But read to them, and—but nothing—I didn't have to pick them up and pull on them and stuff like that.

18

(R. 31-2). Thus, when given the opportunity to detail the amount of standing, kneeling, and walking is required by her jobs, Combs' own testimony reflects that a large part of her job can be performed sitting down. Id. Moreover, after hearing Comb's testimony regarding her job description, the VE explained that the <u>Dictionary of Occupational Titles</u> would categorize a teacher's aide as light semi-skilled work. (R. 32). The VE further concluded that a person of the same age, education, and work background as Combs, who would be capable of light work provided that it did not involve exposure to heights or hazards, could perform Combs' past work as a teacher's assistant. Id. The ALJ relied on this testimony and the description given in the <u>Dictionary of Occupational Titles</u> and in Social Security Ruling 00-4p when determining that Combs possessed the RFC to perform her job as a teacher's assistant as it is actually performed. (R. 16). The undersigned finds that the ALJ's conclusion is supported by substantial evidence.

## V.  RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's motion for summary judgment be GRANTED, Combs' motion for summary judgment be DENIED, and that the final decision of the Commissioner be AFFIRMED.

## VI.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed

pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

      2.    A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

      The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

                                                /s/

                                    Douglas E. Miller
                                    United States Magistrate Judge

                                    Douglas E. Miller
                                    United States Magistrate Judge

Norfolk, Virginia
December 20, 2011

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Charlene A Morring
Montagna Klein Camden LLP
425 Monticello Ave
Norfolk, VA 23510

Joel Eric Wilson
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

Deputy Clerk

_____, 2011

21